UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

JUN - 3 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MARIA CLARK,

        Plaintiff,

v.                                    ACTION NO. 2:09cv417

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Maria Clark ("Clark"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed November 6, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

### I. PROCEDURAL BACKGROUND

On March 9, 2007, Clark filed an application for DIB alleging an onset of disability as of March 7, 2007, due to diabetic and other neuropathy; ischemic heart disease; neck, back and leg pain;

depression; and stress.[1] (R.[2] at 23, 39-40, 89.) Clark's application was denied by the Social Security Administration initially on July 31, 2007 (R. at 39-41), and upon reconsideration on December 6, 2007 (R. at 45-47).

On December 27, 2007, Clark requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 48.) That hearing was held in Norfolk, Virginia, on February 3, 2009. (R. at 19.) Clark testified at the hearing (R. at 21-33); she was represented by her attorney, James Short (R. at 21). Edith Edwards, a vocational expert, also was present and testified at the hearing. (R. at 33-36.)

On February 25, 2009, the ALJ issued a decision finding that Clark was not entitled to DIB because she was not disabled within

---

[1] Clark's Disability Report indicates that she suffers from stress, neck pain, numbness in her hands and legs, heart problems, depression, and back and leg pain. (R. at 89.) Clark's Notice of Disapproved Claim indicates that she suffers from diabetic and other neuropathy, ischemic heart disease and discogenic/ degenerative back disorder. (R. at 39-40.) In the transcript of the hearing, the ALJ asked, "you're alleging disability based on diabetes mellitus with resulting peripheral neuropathy and ischemic heart disease. . . . Did I overlook anything?" (R. at 23.) Clark responded, "And carpal tunnel." Id. The ALJ's decision indicates that Clark suffers from peripheral polyneuropathy, ischemic heart disease, obesity, and carpal tunnel syndrome. (R. at 13.) The ALJ also noted that Clark has suffered from neck and back pain, diabetes, and depression. (R. at 15-16.) Plaintiff also alleges that she suffers from cervical herniated discs, obstructive sleep apnea, and hypertension in her Brief in Support of Plaintiff's Motion for Summary Judgment. (Mem. Supp. Pl.'s Mot. Summ. J. at 7 [hereinafter Pl.'s Mem. Supp.].)

[2] "R." refers to the transcript of the administrative record of proceedings relating to this case.

2

the meaning of the Act at any time from March 7, 2007, through the date of decision. (R. at 11.) Specifically, the ALJ found that Clark had "the residual functional capacity to perform the full range of sedentary work . . . except [she] can do work that does not involve pushing, pulling, or crawling. [Clark] can do work that involves occasional reaching, but not frequent reaching as would be required in a production environment." (R. at 14.) The ALJ further found that Clark was capable of performing past relevant work, and alternatively, there are jobs that exist in significant numbers in the national economy that Clark could perform. (R. at 17.)

On April 23, 2009, Clark requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Appeals ("Appeals Council"). (R. at 4-5.) The Appeals Council denied Clark's request for review on July 24, 2009, stating that it found no reason to review or change the ALJ's decision. (R. at 1-3.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981.

Clark brought the instant action seeking judicial review of the decision of the Commissioner denying her claim for DIB. Clark filed the instant complaint on August 20, 2009, which Defendant answered on November 4, 2009. Clark filed a motion for summary judgment with a memorandum in support on December 15, 2009. Defendant filed a motion for summary judgment and in opposition to

Clark's motion for summary judgment with a memorandum in support on January 15, 2010. Neither party has indicated special circumstances requiring oral argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda.

## II. **FACTUAL BACKGROUND**

Clark is a fifty-three (53) year old female, who was fifty (50) on the date of the alleged onset of her disability and fifty-two (52) at the time of the ALJ's February 25, 2009 decision. (R. at 21.) Clark completed eighth grade, and she attended a semester of college classes at Tidewater Community College. (R. at 28.) She has worked in the past as a customer service representative and an executive assistant. (R. at 22, 79-83.) Clark alleges that she became disabled as of March 7, 2007, due to diabetic and other neuropathy, ischemic heart disease, neck, back and leg pain, depression, and stress. (R. at 23, 39-40, 89.)

The ALJ found that, at the time of the February 3, 2009 hearing, Clark suffered from peripheral polyneuropathy, ischemic heart disease, and obesity, which the ALJ found to be severe impairments. (R. at 13.) The ALJ found that Clark's carpal tunnel syndrome was non-severe, and her depression did not rise to the level of a medically determinable mental impairment. (R. at 13, 16.) The ALJ determined that Clark's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.) The ALJ then

4

found that Clark had the residual functional capacity to perform sedentary work with limitations on pushing, pulling, crawling and frequent reaching. (R. at 14.) The ALJ found that Clark could return to her past work as a customer service representative or an executive assistant, because "both positions are performed at a sedentary exertion [level] and [are] not precluded by [Clark's] residual functional capacity." (R. at 17.) Alternatively, the ALJ found that there are jobs that exist in significant numbers in the national economy that Clark can perform. Id. Accordingly, the ALJ found that Clark was not disabled within the meaning of the Act. Id.

## III. STANDARD FOR SUMMARY JUDGMENT

The Court shall grant summary judgment if, viewing the record as a whole, it concludes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp, 477 U.S. at 322-27. In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences

5

favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must "view[] the record as a whole in the light most favorable to the non-movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so one-sided that one party must prevail as a matter of law," the Court should grant summary judgment in that party's favor. Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set out specific facts showing a genuine issue for trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When deciding cross-motions for summary judgment, a district court retains the responsibility to examine the record to ensure that no

disputed issues of fact exist, despite the parties' assurances to that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Clark was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456 (citing

King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court "do[es] not conduct a *de novo* review of the evidence" or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. The issue before this Court, therefore, is not whether Clark is disabled, but whether the Commissioner's finding that Clark is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

## V. **ANALYSIS**

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act

as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(1)(A). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

## A. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. § 404.1520. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is *not* disabled and the inquiry is halted.

_____

[3] "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[4] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

20 C.F.R. § 404.1520(a)(4)(i), (b).

(2) Whether the claimant has a severe impairment (i.e., whether the claimant has an impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities"). If not, the claimant is *not* disabled and the inquiry is halted. Id. § 404.1520(a)(4)(ii), (c).

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted. Id. § 404.1520(a)(4)(iii), (d).

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is *not* disabled and the inquiry is halted. Id. § 404.1520(a)(4)(iv), (f).

(5) Whether the claimant is able to perform any other work considering the claimant's residual functional capacity[5] and vocational abilities. If so, the claimant is *not* disabled. Id. § 404.1520(a)(4)(v), (g).

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1545(a)(1).

In this case, the ALJ decided at step four of the analysis that Clark was not disabled.

## 1. **Steps One Through Three**

At step one of the analysis, the ALJ determined that Clark "has not engaged in substantial gainful activity since March 7, 2007, the alleged onset date." (R. at 13.) At step two, the ALJ determined that Clark's peripheral polyneuropathy, ischemic heart disease and obesity are severe impairments. Id. However, the ALJ determined that Clark's carpal tunnel syndrome is non-severe because after surgery, Clark did not require additional significant medical treatment, and the carpal tunnel syndrome did not cause continuous functional limitations. Id. At step three, the ALJ found that Clark "does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." Id.

## 2. **The ALJ's RFC Determination**

Prior to step four, the ALJ determined Clark's Residual Function Capacity ("RFC") to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. (R. at 14-17.) The RFC determination was based on the ALJ's evaluation of the evidence in the record, including Clark's testimony, and the findings of treating, non-treating and other consulting physicians, and the state agency's disability determination, rendered by a non-examining physician, which reflect

judgments about the nature and severity of the impairments and resulting limitations. (R. at 25-27.) Based on the evidence as a whole, the ALJ determined that Clark is capable of performing sedentary work with limitations on pushing, pulling, crawling and frequent reaching. (R. at 14.)

### a. Claimant's Testimony

In reaching a conclusion about Clark's RFC, the ALJ gave consideration to Clark's testimony. The ALJ noted in his opinion that Clark's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, however [Clark's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment." (R. at 15.) The ALJ found that despite Clark's allegations regarding the intensity and persistence of her pain, she reports participating in daily activities such as walking on the treadmill, preparing meals, doing light household chores, shopping and driving. (R. at 15-16.) Additionally, the ALJ found that the medical evidence indicates Clark received only conservative medical treatment for her peripheral polyneuropathy and chronic neck and back pain. (R. at 17.) Further, Clark's heart condition has improved with surgery and medication. Id.

### b. Review of the Medical Evidence

The ALJ considered the objective medical evidence in the

12

record and found that "[t]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant can do work that does not involve pushing, pulling, or crawling. The claimant can do work that involves occasional reaching, but not frequent reaching as would be required in a production environment." (R. at 17.)

The ALJ considered the medical source opinions of treating and examining physicians in the record. (R. at 15-16.) First, the ALJ considered the records of Dr. Partha Manchikalapudi (R. at 15), who treated Clark following her cardiac infarction in November 2004 (R. at 179-88, 192-93, 270). Dr. Manchikalapudi's records indicate that Clark has a history of atherosclerotic heart disease and hypercholesterolemia. (R. at 188-89.) In April 2006, Clark began to experience chest pain, which resembled the pain she experienced before her heart attack in 2004. (R. at 189.) Dr. Manchikalapudi performed a cardiac catheterization on April 13, 2006, which showed eighty percent stenosis[6] of the left anterior descending artery, eighty percent stenosis of the ostium of the circumflex coronary artery, and mild left ventricular function with an estimated ejection fraction of forty-five percent. (R. at 186-87). Based on these results, Clark underwent coronary artery bypass surgery on April 24, 2006. (R. at 153.)

---

[6] Stenosis refers to the narrowing of any canal or orifice. Stedman's Medical Dictionary 1695 (Lippincott, Williams & Wilkins, 27th ed. 2000).

Clark's symptoms improved after her cardiac surgery (R. at 185), but she returned to Dr. Manchikalapudi's office on November 10, 2006, complaining of chest pain and shortness of breath (R. at 183). She reported going through "quite a bit of stress at her workplace." Id. Subsequent tests showed that Clark had a small area of mild anterior ischemia and normal LV function with an ejection fraction of fifty percent. (R. at 181-82.) Clark continued her medical therapy, but declined to have a heart catheterization. Id.

On December 1, 2006, Clark underwent a stress test. (R. at 192.) The test revealed a mild area of anterior ischemia. (R. at 176, 192.) The left ventricle ejection fraction was sixty-three percent. (R. at 192.) Clark also had an echocardiogram, which revealed normal LV size with segmental wall motion abnormalities, specifically mild anteroapical hypokinesis, with an estimated ejection fraction of fifty to fifty-five percent. (R. at 193.) Mild mitral regurgitation was also noted. Id.

In March 2007, Clark again reported having chest pains to Dr. Manchikalapudi, and she decided to have a heart catheterization after a positive stress test. (R. at 179.) At that time, the stenosis in the ostium of the left anterior descending coronary artery had improved to fifty percent, as compared to eighty percent one year prior. (R. at 177.) The stenosis in Clark's obtuse marginal branch one was unchanged at seventy percent. (R. at 176-

14

78.)  Clark's ejection fraction was forty-five percent.  (R. at 178.)

Dr. Manchikalapudi completed a Physical Capacities Evaluation for Clark on January 18, 2008.  (R. at 270-72.)  Dr. Manchikalapudi indicated that Clark could not stand or walk for as long as two hours without an opportunity to sit, but she could stand or walk for as much as five to six hours with periodic breaks, and she could sit for as much as two hours.  (R. at 270.)  Dr. Manchikalapudi further indicated that Clark could not work a full eight hour day even if she could change from sitting to standing at will.  Id.  Dr. Manchikalapudi further indicated that it was medically necessary that Clark be inactive or rest for a period during an eight hour workday, but did not indicate how long that period would need to be.  (R. at 272.)

The ALJ also considered medical evidence from other treating physicians.  (R. at 15-16.)  Dr. Victor Salib, Clark's primary care physician, completed a Physical Capacities Evaluation for Clark on December 31, 2007, in which he indicated that Clark could sit for seven to eight hours; could not stand for as long as two hours; could not lift over ten pounds; and suffered from swelling in her legs, depression, chest pain with exertion, and pain in her wrists and lower back.  (R. at 254-56.)  On January 12, 2009, Dr. Salib provided a list of conditions from which Clark suffers, including her heart problems, back pain, peripheral polyneuropathy, diabetes,

15

obstructive sleep apnea, and hypertension. (R. at 273.) Dr. Salib opined that Clark's "overall functional condition does not qualify her for any gainful employment." Id.

Clark was referred to Dr. Richard Wertheimer, a neurologist, for numbness in her hands in September 2006. (R. at 169.) At her first visit, Dr. Wertheimer noted that Clark underwent carpal tunnel release in 2005. Id. At that time, Clark also reported to Dr. Wertheimer that she experienced blurred vision, ankle swelling, back and neck pain, and hair loss. Id. Dr. Wertheimer's examination revealed "good strength in all four extremities" and "decreased pinprick in the index fingers bilaterally and in the heel of the right hand." (R. at 170.) He opined that Clark was having a possible recurrence of carpal tunnel syndrome, Id., however after conducting an electromyography report and nerve conduction studies, Dr. Wertheimer determined there was evidence of generalized peripheral polyneuropathy of uncertain etiology, (R. at 168, 171-72).

On November 14, 2006, Clark saw Dr. Wertheimer again and reported numbness in her feet for the past several months and occasional orthostatic dizziness. (R. at 168.) She also reported gaining weight "for a long time," and reported gaining six pounds in the past few months. Id. Though she has a family history of diabetes, Clark's random glucose, hemoglobin A1c, and TSH were normal in June 2006. Id. Dr. Wertheimer's examination further

16

revealed appropriate affect, good strength in all four extremities, distal blunting of pinprick in all four extremities, slightly decreased vibratory sensation in both feet, proprioception[7] and coordination intact, and normal gait.  Id.

Dr. Wertheimer saw Clark again in January 2007.  Clark reported persistent numbness in her hands; cramps in her legs, which improved after she discontinued lisinopril; numbness in both feet and toes after walking more than a minute on the treadmill; low back pain; and achiness in legs that improves after walking for awhile.  (R. at 167.)

In March 2007, Dr. Wertheimer noted that Clark complained of neck pain, in addition to persistent numbness in her hands.  (R. at 166.)  She reported pain in her left calf after walking, and she stated that "sometimes the left side of her body 'doesn't know what to do' although she was unable to explain this in any detail."  Id. Dr. Wertheimer's examination revealed diminished pulses in both feet, good strength in all extremities, diminished pinprick in the left face, arm and leg, intact vibratory sensation and proprioception, dysmetria of the left upper extremity on finger-to-nose, and slightly wide-based gait.  Id.  Dr. Wertheimer opined that Clark's left-sided sensory loss and reflex asymmetry suggest the possibility of a cerebrovascular accident, and that Clark may

---

[7] Proprioception is the sense or perception of the movements and position of the body, independent of vision. Stedman's Medical Dictionary 1458 (Lippincott, Williams & Wilkins, 27th ed. 2000).

17

also have claudication of the lower extremities and angina.  Id.
Dr. Wertheimer ordered a magnetic resonance imaging ("MRI") scan of
the brain, which was conducted on March 20, 2007, and which was
unremarkable.  (R. at 166, 191, 218.)  Dr. Wertheimer also ordered
arterial studies of the lower extremities (R. at 166), and these
showed normal arterial circulation in the lower extremities
bilaterally at rest, with arterial insufficiency following exercise
(R. at 269).

     Dr. Wertheimer saw Clark again on July 24, 2007.  (R. at 269.)
Clark reported undergoing cardiac catheterization and an
angioplasty.  Id.  She reported that the numbness in her hands was
unchanged, it was worse on the right, she had trouble opening jars
and it was difficult for her to type or write.  Id.  Clark also
reported cramping in her right foot, occasional chest pain, left
elbow pain, and pain in her legs after walking short distances.
Id.  Dr. Wertheimer noted that superimposed bilateral carpal tunnel
syndrome is likely, and symptoms seem worse on the right side.  Id.
Further, Dr. Wertheimer noted that Clark has coronary artery
disease and possible arterial claudication of the lower
extremities.

     In November 2007, Clark reported to Dr. Wertheimer that she
was suffering low back pain, as well as pain in her left calf.  (R.
at 268.)  An MRI scan of the lumbrosacral spine showed
intervertebral disk disease without severe stenosis.  Id.  An EMG

18

and nerve conduction study done in August 2007 showed worsening of polyneuropathy since the previous study, but Clark had a normal aortoiliac duplex study with no areas of stenosis. Id. Dr. Wertheimer recommended physical therapy for Clark's pain, noting there was no evidence to suggest vascular or neurogenic claudication. Id.

Dr. Wertheimer saw Clark on January 11, 2008, which is the last visit on record. (R. at 267.) At that time, Dr. Wertheimer indicated that Clark had diabetic neuropathy, as a glucose tolerance test done in December 2007 was consistent with a diagnosis of diabetes. Id. Clark complained of left-sided back pain, though physical therapy and pain medication provided some relief. Id. She also reported that her left leg was getting weaker. Id. Dr. Wertheimer's examination revealed that Clark had pain on left hip flexion, and mild proximal left lower extremity weakness. Id. "Straight leg raising and figure 4 maneuvers" were positive on the left. Id. Further, Clark had weak sensation in her left leg, as well as decreased weight-bearing. Id.

Dr. Wertheimer completed a Physical Capacities Evaluation for Clark on January 8, 2008. (R. at 264-66.) Dr. Wertheimer opined that Clark can stand for thirty minutes and sit for seven to eight hours; can only lift up to five pounds; has pain and instability in her feet; has loss of sensation in her hands; and has low back pain that is moderate and constant. Id. Dr. Wertheimer concluded that

Clark could perform sedentary or light work involving mainly sitting and only occasionally lifting objects up to twenty pounds. Id.

Finally, the ALJ considered the opinion evidence of the state agency medical consultants. (R. at 16.) Consultations were initially completed by Dr. David Deaver, a psychiatry specialist (R. at 194-206), and Dr. Michael Cole, an internal medicine specialist (R. at 208-14). Dr. Robert Castle reviewed Dr. Cole's assessment and affirmed it as written. (R. at 215.)

Additional objective medical evidence in the record relevant to Clark's functional capacity, and available for the ALJ's review, includes notes and records from multiple treating, examining, and evaluating physicians. These include:

- Dr. Petruschak, a radiologist, who interpreted an MRI of Clark's cervical spine in July 2006. (R. at 162.) Dr. Petruschak indicated that Clark has a focal disc protrusion at C6/C7 and minimal disc bulging at C4/5 and C5/6, which do not touch Clark's spinal cord. Id. Dr. Petruschek also reported that Clark's foramen appeared normal. Id.

- Dr. Jacobus Budding, who conducted a doppler examination on Clark on June 25, 2007. (R. at 207.)

- Dr. Wayne Derkac, who performed Clark's coronary artery bypass surgery in April 24, 2006. (R. at 153-55.)

### 3. **Steps Four and Five**

At step four of the analysis, the claimant bears the burden to prove that she is unable to perform her past relevant work. Grant v. Schwiker, 699 F.2d 189, 191 (4th Cir. 1983). Based upon the RFC determination, supra, that Clark is capable of performing sedentary work with some additional restrictions, and the testimony from the vocational expert, Edith Edwards, the ALJ found that Clark retained the capability to perform the functional demands of her previous occupations as a customer service representative and as an executive assistant. (R. at 17.) As indicated by the vocational expert, these jobs were performed at a sedentary exertion level and are not precluded by Clark's RFC. Id. Alternatively, the ALJ found that even if Clark could not perform past relevant work, there are jobs that exist in significant numbers in the national economy that she can perform. (R. at 17-18.) Therefore, the ALJ found that Clark is not disabled within the meaning of Sections 216(i) and 223(d)(1) of the Social Security Act. (R. at 18.)

### B. **Plaintiff's Allegations**

Clark makes four arguments regarding the ALJ's analysis: (1) the ALJ failed to consider whether Clark's severe impairments meet or equal a medical listing; (2) the ALJ failed to consider whether Clark's impairments of cervical herniated discs, diabetes mellitus, obstructive sleep apnea, and hypertension are severe impairments, and the ALJ incorrectly found that Clark's carpal tunnel syndrome

21

and depression were not severe impairments; (3) the ALJ improperly rejected the medical opinions of two treating physicians; and (4) the ALJ improperly discredited Clark's credibility.

As discussed below, the Court FINDS that there is substantial evidence in the record to support the ALJ's findings that Clark's severe impairments are her peripheral polyneuropathy, ischemic heart disease, and obesity, and despite these severe impairments, Clark is not disabled within the meaning of the Act. Accordingly, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

### 1. The ALJ's Determination of Clark's Severe Impairments

Clark argues that the ALJ committed reversible error by failing to consider whether her cervical herniated discs, diabetes mellitus, obstructive sleep apnea, and hypertension are severe impairments. Clark also argues that the ALJ improperly found that her carpal tunnel syndrome and depression are not severe impairments. For the reasons discussed below, the Court finds that the ALJ adequately considered Clark's symptoms, and the ALJ's determinations regarding Clark's impairments are supported by substantial evidence in the record.

Step two of the sequential evaluation requires the ALJ to consider whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii), (c). In this case, the ALJ determined that Clark suffers from peripheral

22

polyneuropathy, ischemic heart disease and obesity. (R. at 13.) The ALJ did not analyze whether Clark's cervical herniated discs, diabetes mellitus, obstructive sleep apnea, and hypertension constitute severe impairments. However, because the ALJ determined that Clark had a severe impairment or combination of impairments, he continued to step three of the sequential evaluation. Id.; see 20 C.F.R. § 404.1520(a)(4).

An impairment cannot be established by the claimant's statement of symptoms alone, but must be demonstrated "by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508; see also 42 U.S.C. § 423(d)(5)(A). It is the claimant who bears the burden of demonstrating a medically severe impairment or combination of impairments. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (citing 42 U.S.C. § 423(d)(5)(A), which provides that a claimant "shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof . . . .").

An impairment is severe within the meaning of the Social Security regulations if it imposes significant limitations on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521(a). In contrast, an impairment is not severe if it "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1982). Basic work

23

activities are defined as "the abilities and aptitudes necessary to do most jobs," which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instruction;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). In assessing the functionally limiting effects of a claimant's impairment or combination of impairments, the ALJ must consider any "symptom-related limitations" -- restrictions caused by symptoms, such as pain, fatigue, or weakness -- provided that the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." Soc. Sec. Ruling 96-3p.

In this case, the ALJ conducted a thorough and detailed review of Clark's medical history. (R. at 15-17.) The ALJ also considered Clark's testimony. (R. at 15.) Ultimately, the ALJ found that Clark's severe impairments were peripheral polyneuropathy, ischemic heart disease and obesity. (R. at 13.) The ALJ further determined that Clark's carpal tunnel syndrome was non-severe. Id. The Court has reviewed the entire administrative record, and finds that the ALJ's determination of Clark's severe impairments is supported by substantial evidence.

## a. Cervical Herniated Discs

Clark argues that the ALJ committed reversible error by failing to discuss whether her cervical herniated discs constitute a severe impairment.[8] "Though the Fourth Circuit has not addressed the question of whether an ALJ's failure to consider the severity of some impairments at step two of the evaluation constitutes reversible error where the ALJ makes a finding that the clamant has another severe impairment, other courts have done so and answered in the negative, provided the ALJ considered the impairment in subsequent steps of the sequential evaluation." Jones v. Astrue, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009)(citing Hill v. Astrue, 289 Fed.Appx. 289, 292 (10th Cir. 2002); Maziarz v. Sec'y of Health & Human Serv., 837 F.2d 240, 244 (6th Cir. 1987)). This Court agrees, and finds that it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps. Id.

Review of the ALJ's opinion indicates that the ALJ discussed

---

[8] As a preliminary matter, the Court notes that the Clark did not mention her cervical herniated discs at the hearing, but she did complain of neck and back pain. Additionally, Clark did not mention cervical herniated discs in her disability application or her disability report, but again referred to neck and back pain. (R. at 90, 125.) Similarly, though the ALJ did not specifically mention cervical herniated discs, he did discuss Clark's complaints regarding her neck and back pain (R. at 15), medical records involving Clark's spine (R. at 16), and Clark's treatment of her pain with medication (R. at 17).

evidence related to Clark's cervical herniated discs when assessing Clark's RFC. (R. at 16.) The ALJ noted, "[e]vidence of record indicates that the claimant complains of neck, leg, back, and bilateral hand pain." (R. at 15.) Further, the ALJ noted that both Dr. Manchikalapudi and Dr. Salib discussed Clark's chronic back pain in their treatment records and evaluations. Id. The ALJ discussed the MRI of Clark's cervical spine, which was read by Dr. Petruschak, as well as Dr. Wertheimer's records of Clark's complaints of pain. (R. at 16.) The ALJ concluded, "the evidence indicates only conservative treatment of . . . chronic neck and back pain with over-the-counter or mild medication." (R. at 16-17.)

If a symptom can be reasonably controlled by treatment, it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Here, as noted by the ALJ, Clark's neck and back pain is controlled by treatment, and she is able to perform activities of daily living and take care of personal needs. (R. at 15-17.)

It is clear to the Court that the ALJ considered Clark's cervical herniated discs when conducting his RFC analysis. The ALJ concluded, based on substantial evidence, that Clark's herniated discs were not a severe impairment because the resulting pain is controlled by medication and she able to perform daily activities. Accordingly, the Court FINDS that the ALJ's failure to discuss Clark's cervical herniated discs at step two of the sequential

26

disability analysis was not reversible error.

## b. <u>Diabetes</u>

It is also clear to the Court that the ALJ considered Clark's diabetes. The medical evidence shows that to the extent Clark's ability to work has been affected by her diabetes, it is the resulting peripheral polyneuropathy specifically that affects her. At the hearing, the ALJ stated, "you're alleging disability based on diabetes mellitus *with resulting peripheral neuropathy . . .*" (R. at 23.)(emphasis added.) There is ample evidence in the medical record regarding Clark's peripheral polyneuropathy, and the ALJ reviewed it. Further, there is no evidence in the record of how Clark's diabetes interferes with her ability to work in any other way.[9] Therefore, the ALJ sufficiently addressed Clark's diabetes in his analysis of her peripheral polyneuropathy.

## c. <u>Sleep Apnea and Hypertension</u>

The claimant has the burden of establishing that an impairment

---

[9] The medical records indicate that Clark developed diabetes mellitus in late 2007. (R. at 267.) There are no medical records in the record of this case after January 2008, and there is little evidence of how Clark's diabetes (apart from her peripheral polyneuropathy) affected her ability to work. The only piece of evidence that mentions the impact of Clark's diabetes beyond her peripheral polyneuropathy is in the January 12, 2009 letter from Dr. Salib. (R. at 273.) Dr. Salib states, "Mrs. Clark suffers from multiple chronic debilitating conditions that includes the following . . . 3. Peripheral polyneuropathy resulting in persistent pain and decreased sensation of lower extremities . . . 5. Diabetes mellitus requiring intensive medication therapy." <u>Id.</u> This reference, which was noted by the ALJ (R. at 15), does not indicate that Clark's diabetes impacted her ability to work in any way other than the resulting peripheral polyneuropathy.

is severe. <u>English v. Shalala</u>, 10 F.3d 1080, 1082 (4th Cir. 1993). She also bears the burden of providing evidence of a condition and demonstrating how the condition affects her ability to work on a sustained basis. 20 C.F.R. § 404.1529(b)("Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or physiological abnormalities ...."); <u>see also</u> <u>id.</u> at §§ 404.1512(c), 404.1545(a)(3); <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995). Then, the ALJ has the duty to evaluate the intensity and persistence of a claimant's symptoms, but "that duty does not extend to speculating as to the impact of those symptoms." <u>Sherrod v. Astrue</u>, 2009 WL 2489253, at *5 (E.D.N.C. Aug. 13, 2009).

Here, Clark did not allege that sleep apnea or hypertension affected her ability to perform work on a sustained basis in her application for disability or on her Disability Report Form. (R. at 90, 125.) She also did not mention sleep apnea or hypertension at the hearing before the ALJ. (R. at 23-33.) Clark reported that she was "[b]eing treated for possible sleep apnea" in her report of recent medical treatment on October 9, 2008 (R. at 144), however, when discussing sleep disturbances at the hearing, Clark did not mention sleep apnea (R. at 29). The only mention of sleep apnea and hypertension in the medical records comes from Dr. Salib's

28

January 12, 2009 Letter.[10] (R. at 273.) ("Mrs. Clark suffers from multiple chronic debilitating conditions that includes the following: . . . 4. Obstructive sleep apnea causing chronic fatigue . . . 8. Hypertension currently on medications.")

The Court finds that the ALJ's failure to address Clark's sleep apnea and hypertension was not reversible error because these impairments do not have support in the record. Prior to the filing of her Motion for Summary Judgment, Clark did not allege that sleep apnea and hypertension were severe impairments. Though Dr. Salib noted Clark's sleep apnea and hypertension in his letter, the ALJ concluded that Dr. Salib's opinion of Clark's inability to work was not well-supported by the evidence of record. (R. at 15.) Clark did not present evidence indicating how sleep apnea and hypertension limited her ability to perform work related activities, and she failed to show that either her sleep apnea or her hypertension restricted her ability to work for at least twelve months, as required by the Social Security Regulations. See 42 U.S.C. § 416(i)1). Accordingly, given the state of the evidence and the claims actually advanced before the ALJ, the Court does not find any basis for reversal based on Clark's argument that the ALJ should have considered her hypertension and sleep apnea in his

---

[10] The Court observes that there are no medical records indicating that Clark was diagnosed or treated for either sleep apnea or hypertension. Without support in the medical records, Dr. Salib's conclusory statement carries little weight.

opinion.  See Dewitt v. Astrue, 2009 WL 1873807, at *4 (D. Kan.
June 30, 2009)(finding no basis for reversal due to the ALJ's
failure to consider the claimant's obesity in his opinion where the
claimant did not raise obesity as an impairment, the claimant did
not discuss how her obesity impaired her ability to work, and there
was no evidence on record to suggest the claimant's obesity
contributed to an impairment).

### d. Carpal Tunnel Syndrome

Clark alleges that the ALJ erred in finding that her carpal
tunnel syndrome is not a severe impairment.  (Pl.'s Mem. Supp. at
10.)   Clark "concede[s] that her carpal tunnel syndrome is not
disabling," but notes that "it is likely to cause some work-related
restrictions (e.g., limited grip strength, limited fine finger
manipulation, or limited repetitive usage)" that the ALJ did not
consider.  Id.

The ALJ found that Clark's carpal tunnel syndrome is nonsevere
"because, after the surgical release of the right hand in 2005, the
claimant did not require additional significant medical treatment,
and the [carpal tunnel syndrome] did not result in any continuous
exertional or nonexertional functional limitations."   (R. at
13)(citation omitted).   Further, the ALJ took into account Clark's
difficulties with her hands in determining her RFC.  Specifically,
the ALJ determined that Clark could perform sedentary work
excluding work that involves pushing, pulling or crawling, and

30

Clark "can do work that involves occasional reaching, but not frequent reaching as would be required in a production environment." (R. at 14-17.)

The Court FINDS that the ALJ's determination that Clark's carpal tunnel syndrome is non-severe is supported by substantial evidence. If a symptom can be reasonably controlled by treatment, it is not disabling. Gross, 785 F.2d at 1166. Here, there is substantial evidence, based on the lack of treatment records regarding carpal tunnel syndrome, to suggest Clark's carpal tunnel syndrome was effectively treated by surgery.[11] Further, Clark concedes that her carpal tunnel syndrome is not disabling.

Clark contests the extent to which the ALJ incorporated Clark's restrictions from carpal tunnel syndrome into her RFC. (Pl.'s Mem. Supp. at 10.) The Court disagrees that the ALJ's analysis was incomplete because the ALJ properly considered Clark's carpal tunnel syndrome when assessing her RFC.

"In assessing RFC, the [ALJ] must consider limitations and

---

[11] The Court notes that there are only two instances in the medical records when a physician discussed Clark's carpal tunnel syndrome after her release surgery in 2005. First, Dr. Wertheimer suspected that Clark had a recurrence of carpal tunnel syndrome in September 2006, (R. at 169-70), however he later determined that there was evidence of generalized peripheral polyneuropathy that likely was causing Clark's symptoms, (R. at 168, 171-72). Second, in July 2007, Dr. Wertheimer noted that in addition Clark's peripheral polyneuropathy, "[s]uperimposed bilateral carpal tunnel syndrome is likely, and symptoms seem worse on the right side." (R. at 269.) However, Dr. Wertheimer's subsequent treatment notes for Clark do not reflect treatment and care for carpal tunnel syndrome. (R. at 264-68.)

restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling (SSR) 96-8p ,61 Fed. Reg. 34,474, 34,477 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(2), (e). In this case, the ALJ did consider the limitations imposed by Clark's carpal tunnel syndrome when assessing her RFC. The ALJ specifically found that Clark could not perform work that involves pushing, pulling or crawling, and she cannot do work that involves frequent reaching as would be required in a production environment. (R. at 14-17.) These limitations are supported by the evidence in the record from Dr. Wertheimer, which is noted, supra. Accordingly, the Court FINDS that the ALJ's determination that Clark's carpal tunnel syndrome is not a severe impairment is supported by substantial evidence, and the ALJ properly included limitations cause by Clark's carpal tunnel syndrome in his assessment of Clark's RFC.

### e. Depression

Clark alleges that the ALJ's finding that her depression was not severe is not supported by substantial evidence. Clark argues that "[her depression] is more than de minimis and is likely to cause some level of work-related impairment (i.e., limit her to low-stress and/or unskilled job tasks)." (Pl.'s Mem. Supp. at 9.)

When evaluating the severity of mental impairments, the social security regulations require adherence to "a special technique." 20 C.F.R. § 404.1520a(a). First, the ALJ must determine whether

32

the claimant has "a medically determinable mental impairment(s)."
Id. § 404.1520a(b)(1). Second, the ALJ must "rate the degree of
functional limitation resulting from the impairment(s)," id.
§ 404.1520a(b)(2), in "four broad functional areas": (1)
"[a]ctivities of daily living"; (2) "social functioning"; (3)
"concentration, persistence, or pace"; and (4) "episodes of
decompensation," id. § 404.1520a(b)(3). The first three functional
areas are assigned a rating of "[n]one, mild, moderate, marked,
[or] extreme." Id. § 404.1520a(b)(4). The fourth functional area
is assigned a rating of "[n]one, one or two, three, [or] four or
more." Id. Third, the ALJ uses the ratings of the degree of
functional limitation to "determine the severity of [the
claimant's] mental impairment(s)." Id. § 404.1520a(d). The mental
impairment will generally be considered "not severe" if the first
three functional areas are assigned a rating of "none" or "mild"
and the fourth functional area is assigned a rating of "none." Id.
§ 404.1520a(d)(1). Fourth, if the mental impairment is deemed
severe, then the ALJ must "determine if it meets or is equivalent
in severity to a listed mental disorder." Id. § 404.1520a(d)(2).
Finally, if the claimant has "a severe mental impairment(s) that
neither meets nor is equivalent in severity to any listing, [the
ALJ] will then assess [the claimant's] residual functional
capacity." Id. § 404.1520a(d)(3).

    In reviewing the ALJ's determination that a claimant does not

33

suffer from a severe impairment, "the court's function . . . is limited to determining whether substantial evidence exists in the record to support the ALJ's findings." Watkins v. Astrue, No. 2:08cv56, 2009 WL 3855756, at *17 (W.D. Va. Nov. 17, 2009). For the reasons stated herein, the Court FINDS that the ALJ's determination that Clark's depression was not a severe impairment is supported by substantial evidence.

In this case, the ALJ found that Clark's alleged depression is not a medically determinable impairment that impacts her residual functional capacity. The ALJ stated:

> In reviewing the evidence of record, DDS examiner Dr. David Deaver indicated that the claimant's medical records did not indicate significant treatment of her alleged depression. Although she was taking Wellbutrin, she required no hospitalizations or emergency treatment. Therefore, Dr. Deaver indicated that the claimant had no medically determinable mental impairment. After consideration of the entire record, the undersigned agrees with Dr. Deaver's assessment and finds that the claimant does not have a medically determinable mental impairment.

(R. at 16.) Though the ALJ did not explicitly go through the subsequent steps of the "special technique" required by 20 C.F.R. § 404.1520a(a), because the ALJ found that Clark did not have a medically determinable mental impairment, further analysis regarding "the degree of functional limitation resulting from the impairment" was unnecessary. See id.; Miller v. Astrue, 2009 WL 2568571, at *12 (N.D.N.Y. Aug. 19, 2009).

34

The Court has reviewed the administrative record, and notes that there is some evidence to suggest that Clark suffers from depression. After the time of Dr. Deaver's review of Clark's medical records, Clark complained to Dr. Salib that she was depressed. (R. at 259.) On September 12, 2007, Dr. Salib noted that Clark was never diagnosed or treated for depression, but she reported a change in appetite, change in her sleep patterns, mood swings and decreased libido since her hysterectomy, and Dr. Salib diagnosed and treated Clark for depression at that time. Id. Dr. Salib prescribed Welbutrin, a norepinephrine and dopamine reuptake inhibitor commonly prescribed for depression, but after three months, Clark reported that it was "driv[ing] [her] crazy" and she was experiencing hot sweats. (R. at 258.) Dr. Salib had Clark discontinue Welbutrin and prescribed her Celexa, a selective serotonin reuptake inhibitor. Id. There are no subsequent treatment records regarding Clark's depression.

Though there is some evidence that Clark suffered from depression, the ALJ's conclusion that Clark's depression was not severe is supported by substantial evidence. The ALJ considered the evidence relating to Clark's depression from Dr. Salib, but the ALJ concluded that Dr. Salib's opinion was not supported by the evidence of record, "including claimant's testimony and report of ability to perform activities of daily living and take care of personal needs." (R. at 15-16.) Further, the ALJ found that Dr.

Deaver's assessment that Clark's depression was not severe was supported by the medical records, which revealed no significant treatment for depression. (R. at 16.)

There is substantial evidence in the record to support the ALJ's finding. First, though a claimant has the burden of presenting evidence of her impairments, Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972), Clark failed to present evidence of her treatment for depression after December 2007.[12] Also, she declined to discuss or put on evidence regarding depression at the hearing before the ALJ. (R. at 21-33.) In her Disability Report, Clark stated that depression "has been part of [her] life for years," and her depression has gotten worse since her heart attack in 2004. (R. at 90.) Additionally, Clark's statement indicates that she was able to work prior to 2004 despite her depression. Further, Clark does not allege that depression interferes with her ability to care for herself, exercise, do small chores around the house, prepare meals, go outside every day, shop, and visit with her mother. (R. at 99-104.)

There are only two medical records that show that Clark sought treatment for depression, and these are from late 2007. Clark saw

---

[12] The Court notes that if a symptom can be reasonably controlled by medication or treatment, it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Because Clark failed to provide evidence regarding her depression after December 2007, it is unclear whether her symptoms of depression were treated by medication or whether they persisted.

multiple physicians between 2004 and 2007, and was noted to have appropriate affect (R. at 168-169), and to be "a pleasant woman in no apparent distress," (R. at 179, 181, 183, 188, 246, 248). Clark denied depression in September 2006 (R. at 169), and medical records from January 2008 through January 2009 reveal that Clark did not report experiencing depression to her treating physician, (R. at 281-93).

## f. Summary

In summary, the ALJ's failure to address Clark's asserted cervical herniated discs, diabetes mellitus, obstructive sleep apnea, and hypertension in his sequential evaluation assessment does not constitute reversible error. Additionally, the ALJ's findings that Clark's carpal tunnel syndrome and depression are non-severe are supported by substantial evidence in the record.

## 2. The ALJ's Application of the Listings of Impairments

Clark argues that the ALJ erred in determining that Clark's medically-determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, 20 C.F. R. Part 404. (Pl.'s Mem. Supp. at 5-7.) Clark argues that the ALJ did not explain why Clark's ischemic heart disease or her peripheral polyneuropathy did not meet any of the listings as required at step three of the sequential disability analysis. Id. Specifically, Clark alleges that evidence in the record establishes that under listing 4.04C, whether a claimant is disabled is

determined by the extent of her coronary blockage, and Clark's coronary blockage is severe. Id. at 6-7. In regard to peripheral polyneuropathy, Clark alleges that she has disorganization of motor functioning under Listing 11.14. Id. at 7. Clark argues that because the ALJ did not conduct a listing-level analysis at step three, the Court should remand the case. Id.

Under listing 4.04C, a claimant meets the requirements for ischemic heart disease if she has coronary artery disease, which (1) is demonstrated by imaging and evidence showing a specific percentage of arterial blockage and (2) results in "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."[13] 20 C.F.R., Part 404, Subpart P, Appendix 1, 4.04C.

Under listing 11.04B and 11.14, a claimant meets the requirements for peripheral neuropathy if she has significant and

---

[13] Specifically, 4.04C provides that the claimant must have coronary artery disease with both 1 and 2:
1. Angiographic evidence showing:
> a. 50 percent or more narrowing of a non-bypassed left main coronary artery; or
> b. 70 percent or more narrowing of another nonbypassed coronary artery; or
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
> e. 70 percent or more narrowing of a bypass graft vessel; and
2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.
20 C.F.R., Part 404, Subpart P, Appendix 1, 4.04C.

persistent disorganization of motor functions in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. 20 C.F.R., Part 404, Subpart P, Appendix 1, 11.04B & 11.14. Specifically, persistent disorganization of motor functions typically consists of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances which occur singly or in various combinations. Id. at Part 404, Subpart P, Appendix 1, 1100C. "The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." Id.

Here, the ALJ found that although Clark's impairments are severe, they "are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet the requirements set forth in the Listing of Impairments, Appendix 1 to Subpart P, 20 CFR Part 404." (R. at 13-14.)

Contrary to Clark's argument and as further explained below, the Court FINDS that the ALJ provided sufficient explanation for his conclusion that Clark's impairments did not meet the requirements of the listings. "[T]here is no particular language or format that an ALJ must use in his or her analysis as long as there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3rd Cir. 2004). Here, the ALJ's opinion not only sets forth the facts used in rendering his decision, but it also

provides a thorough examination of the medical evidence. Further, the Court FINDS that the medical evidence substantially supports the ALJ's finding that Clark did not have the specific clinical signs and diagnostic findings required to meet the requirements set forth in the listings.

Regarding Clark's ischemic heart disease, there is substantial evidence in the record, which is also cited by the ALJ, to support the ALJ's finding that Clark does not meet the listing requirements. The medical records document Clark's stenosis of her left anterior artery both before and after her bypass surgery, revealing that she does not qualify under the listings because the surgery improved her stenosis to fifty percent. (R. at 176-89.) Additionally, the medical evidence reveals that Clark does not have "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." As discussed previously, she is able to care for herself, exercise on a limited basis, do small chores around the house, prepare meals, go outside every day, shop, drive, and visit with her mother. Based on this evidence, it is clear that Clark does not meet listed impairments in Appendix 1, Subpart P, Regulation No. 4.

The record also does not support Clark's argument regarding her peripheral polyneuropathy. First, Clark has not established that she has serious interference with the use of her fingers, hands, and/or arms. 20 C.F.R., Part 404, Subpart P, Appendix 1,

1100C. Though there is no question that Clark suffers from pain and numbness in her extremities at times, she is still able to walk and she maintains good strength in all extremities. (R. at 267-69.) Her coordination and proprioception are intact. Id. Additionally, despite noting Clark's pain in her legs, instability of gait, and loss of sensation in her hands, Dr. Wertheimer indicated that Clark could perform sedentary or light work. (R. at 264-66.) As noted previously, review of the medical evidence indicates that Clark can perform most activities of daily living with only minimal assistance, and she is able to take care of personal needs. Consequently, there is substantial evidence to support the ALJ's conclusion that Clark did not have the clinical signs and diagnostic findings required to meet the requirements set forth in the Listing of Impairments.

### 3. Weight to Clark's Treating Physicians

Clark alleges that the ALJ improperly rejected the medical opinions of Dr. Manchikalapudi and Dr. Salib. (Pl.'s Mem. Supp. at 10-11.) Defendant argues that the ALJ's decision to afford less weight to the opinions of Dr. Manchikalapudi and Dr. Salib is supported by substantial evidence in the record. (Def.'s Mem. Supp. at 16-19.) Defendant provides further explanation about why the opinions of Dr. Manchikalapudi and Dr. Salib should not be afforded considerable weight. Id.

A treating physician's opinion as to the existence, nature, or

severity of a claimant's impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The physician's opinion should be given "significantly less weight" when it is not supported by clinical evidence or is not consistent with other evidence of record. Craig, 76 F.3d at 590. The ALJ has discretion to give less weight to the opinion of a treating physician where there exists persuasive contrary evidence. Hunter, 993 F.2d at 35.

A treating physician's opinion as to a plaintiff's RFC, however, is not entitled to be given controlling weight or special significance. Opinions on these issues are not "medical opinions," but rather opinions "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e). Current regulations distinguish between an RFC, which only the Commissioner can determine, and a "medical source statement about what the claimant can still do." See 20 C.F.R. §§ 404.1513(b)(6), 404.1546; Soc. Sec. Rul. 96-5p. Given that such medical source statements are not technically "medical opinions," by definition they can never be given "controlling" weight. See Soc. Sec. Rul. 96-5p. There is "no special significance to the source of an opinion on [such] issues [that are] reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(e)(3). As such, the

ultimate question of whether a claimant is disabled under the Act is an issue reserved to the Commissioner, and therefore a physician's statement that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance. Id. Nevertheless, because they are medical opinions of a treating physician, they must still be evaluated and may still be entitled to great weight.

Although a statement by a treating physician that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance,

> opinions from any medical source on issues
> reserved to the Commissioner must never be
> ignored. The [ALJ] is required to evaluate
> all evidence in the case record that may have
> a bearing on the determination or decision of
> disability, including opinions from medical
> sources about issues reserved to the
> Commissioner.

Soc. Sec. Rul. 96-5p; see also 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (stating that a treating source opinion on the issue of disability is not determinative of disabled status). Once the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight, if any, to which the opinion is entitled:

(1) the length of treatment and frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the opinion's support by medical evidence;

(4) the opinion's consistency with the record as a whole; and

(5) the treating physician's specialization.

20 C.F.R. §§ 404.1527(d)(2)-(5). These factors may not be omitted or disregarded by the ALJ in weighing the value of a treating physician's medical opinion. See Burch v. Apfel, 9 F. App'x 255, 259, 2001 (4th Cir. 2001) (per curiam) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(d) when declining to give controlling weight to the opinion of a treating physician); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) (electing to join other federal courts in requiring the ALJ to consider § 404.1527(d) factors before declining to give weight to treating physician's opinion and noting that the ALJ should consider factors on remand); Winford v. Chater, 917 F. Supp. 398, 401 (E.D. Va. 1996) ("[I]f an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the five factors identified in the regulation . . . ."). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his attention.[14] See 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

---

[14] For example, the ALJ must consider the medical source's degree of understanding of Social Security disability programs and evidentiary requirements, or the medical source's familiarity with the other information in the claimant's case. 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

The ALJ considered the medical opinions of Dr. Manchikalapudi and Dr. Salib in accordance with the factors identified in the regulation. First, the ALJ noted that both doctors treated Clark on an ongoing basis. (R. at 15.) The ALJ also specified that Dr. Salib is Clark's "treating primary care physician," and Dr. Manchikalapudi is a cardiologist that treated Clark from November 2004 through March 2007. Id. In addition, the ALJ specifically stated that the doctors' opinions of Clark's inability to work are not well-supported by the evidence of record, which the ALJ reviewed in his opinion. Id. The ALJ noted the fact that in contrast to the opinions of Dr. Salib and Dr. Manchikalapudi, Dr. Wertheimer and Dr. Cole both opined that Clark was capable of at least sedentary work. Id. The ALJ also stated that Clark's "testimony and report of ability to perform activities of daily living and take care of personal needs" contradict the doctors' opinions. (R. 16.)

In summary, only after considering the doctors' areas of expertise, the treatment relationships involved, the degree to which Dr. Manchikalapudi's and Dr. Salib's opinions were supported by the relevant evidence, and the degree to which the opinions were consistent with the record as a whole, did the ALJ note the weight he would accord their opinions. (R. 15-16.) Thus, the Court finds that the ALJ weighed the evidence in a manner that complies with the regulations and his findings are entitled to deference. 20

C.F.R. §§ 404.1527(d)(1) & (3)-(5), 416.927(d)(1) & (3)-(5).
Therefore, the Court rejects Clark's claim that the ALJ erred in
weighing the opinions of Dr. Manchikalapudi and Dr. Salib.

### 4. Clark's Credibility

Clark claims that the ALJ improperly found her to be only
partially credible, alleging that the ALJ's assessment of Clark's
credibility was conclusory and not supported by objective medical
evidence. (Pl.'s Mem. Supp. at 12-13.) For the reasons stated
herein, the Court FINDS that the ALJ's determination that Clark is
only partially credible is supported by substantial evidence.

Credibility determinations are reserved to the ALJ. See
Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543
(4th Cir. 1988) ("Deference must be given the fact-finder's
inferences and credibility assessments."); Hammond v. Heckler, 765
F.2d 424, 426 (4th Cir. 1985) ("The ALJ is required to make
credibility determinations."); Smith v. Heckler, 760 F.2d 184, 187
(8th Cir. 1985) ("In a case where there exists conflicting
allegations and claims, credibility findings in the first instance
are for the ALJ."). The Court's analysis is therefore restricted
to determining if the ALJ's decision is supported by substantial
evidence and whether the ALJ applied the correct legal standard.
Craig, 76 F.3d at 589; see also Johnson v. Barnhart, 434 F.3d 650,
658 (4th Cir. 2005) ("Although [the court] cannot make credibility
determinations, [it is] empowered to review the ALJ's decisions for

46

substantial evidence.").

In evaluating a claimant's subjective complaints regarding pain or other symptoms, the ALJ must follow a two-step process: (1) determine whether there is objective medical evidence showing the existence of "a medically determinable impairment(s) that could reasonably be expected to produce [the] symptoms, such as pain" alleged; and (2) if there is such evidence, "evaluate the intensity and persistence of [the claimant's] symptoms [in order to] determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1); see also Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34,483, 34,484-85 (July 2, 1996); Craig, 76 F.3d at 594-95. In conducting the second step of the analysis, the ALJ is required to make a credibility determination as to the claimant's statements "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence". SSR 96-7p, 61 Fed. Reg. at 34,485; see also 20 C.F.R. § 404.1529(c)(4). When making the credibility finding, the ALJ must consider the entire record, including the objective medical evidence, the claimant's daily activities, any factors that aggravate or alleviate the symptoms, any treatment or medications used to relieve symptoms, and statements of treating or nontreating physicians and other persons familiar with the claimant's symptoms. SSR 96-7p, 61 Fed. Reg. at 34,485-87; 20 C.F.R. § 404.1529(c)(3);

<u>Craig</u>, 76 F.3d at 595. Where the ALJ makes a negative credibility determination, he must specify the reasons for his decision and the evidence informing it. <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985); <u>Ivey v. Barnhart</u>, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005).

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight that the [ALJ] gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 61 Fed. Reg. at 34,485-86.

An ALJ may reject a plaintiff's testimony if it is inconsistent with the medical evidence. <u>Mitchell v. Bowen</u>, 827 F.2d 387, 389 (8th Cir. 1987). "Although a claimant's allegations about her pain may not be discredited *solely* because they are not substantiated by objective evidence of the pain itself or its severity, *they need not be accepted to the extent they are inconsistent with the available evidence*, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." <u>Id.</u> (emphasis added).

In the instant case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to

48

cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 15.)

Clark claims that the ALJ's credibility analysis was insufficient and conclusory. However, contrary to Clark's assertions, it is clear to the Court that the ALJ followed the social security regulations and considered the appropriate evidence when assessing Clark's credibility. In support of his RFC assessment and credibility determination, the ALJ referred to the reports of numerous treating and consulting physicians. The ALJ found that despite Clark's statements regarding her pain, her "testimony indicates that [she] can independently perform most functional tasks, including activities of daily living." (R. at 16.) Further, the ALJ noted "the evidence indicates only conservative treatment of the claimant's peripheral polyneuropathy, and chronic neck and back pain with over-the-counter or mild medication. Her treatment records indicate a good response from her 2006 bypass surgery, and the medication therapy has resulted in an increase in her ejection fraction." (R. at 17.) This analysis contains "specific reasons for the finding on credibility, supported by the evidence in the care record" as mandated by the social security regulations. SSR 96-7p.

Additionally, the Court FINDS that there is substantial

evidence in the record to indicate that Clark is only partially credible about the severity of her symptoms and the extent to which they limit her ability to work. The ALJ's determination that Clark is not totally credible is amply supported by the administrative record, and the ALJ explained the evidence he considered in making his credibility determination.

## C. **Conclusion**

The Court FINDS that the ALJ's decision was based upon substantial evidence. In particular, the ALJ throughly reviewed the entire record, properly assigned weight to Clark's treating physicians' opinions, properly analyzed Clark's impairments, and properly considered and weighed Clark's testimony.

## VI. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be UPHELD, that Defendant's motion for summary judgment be GRANTED, and that Plaintiff's motion for summary judgment be DENIED. Accordingly, the Court recommends that the case be DISMISSED.

## VII. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing

50

of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 153-54 (1985); Carr v. Hutto, 737 F.2d 433, 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).


United States Magistrate Judge

Norfolk, Virginia
June 3, 2010

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Blythe Ann Scott, Esq.
Rutter Mills LLP
160 W. Brambleton Ave.
Norfolk, Virginia 23510
Counsel for Plaintiff

Virginia Lynn Van Valkenburg, Esq.
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

June 3, 2010